UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

RAYMOND INVESTMENT CORP.,

Plaintiff,

v.

HELENA CHEMICAL CO., and DOES 1 through 100, inclusive,

Defendant.

No. 2:17-cv-00688-MCE-KJN

**ORDER**

Through the present lawsuit, Plaintiff Raymond Investment Corporation ("Plaintiff") seeks indemnity from Defendant Helena Chemical Company ("Defendant") in connection with environmental clean-up costs that Plaintiff alleges were necessitated by hazardous waste discharges generated by Defendant, an agricultural chemical supplier, while Defendant leased real property owned by Plaintiff in Stockton, California, between 1996 and 2002. Presently before the Court are the parties' Cross-Motions for Summary Judgment. Plaintiff moves for summary judgment only as to its third cause of action, alleging Defendant breached its lease with Plaintiff and that Defendant is accordingly contractually liable to indemnify Plaintiff for investigation and remediation costs. Defendant, for its part, moves for summary judgment as to all three of Plaintiff's claims. For the following reasons, both Cross-Motions are DENIED without prejudice.[1]

---

[1] Because oral argument will not be of material assistance, the Court ordered this matter submitted on the briefs. E.D. Cal. Local Rule 230(g).

1

# BACKGROUND[2]

Plaintiff is the owner of a 6.47-acre parcel of industrial land located in Stockton, California ("the Property"). Defendant leased a 2.25-acre portion of the Property ("the Premises") from Plaintiff pursuant to a written lease agreement from 1996 to 2002 and used the Premises to store and distribute liquid fertilizer along with other fertilizer and/or pesticide products. In 2014, the California Central Valley Regional Water Quality Control Board ("the Water Board") notified Plaintiff that the Premises had been identified as requiring regulatory oversight based on prior investigations finding impermissible levels of 1,2,3-TCP and nitrate in the groundwater.

Prior to Defendant's tenancy, however, two separate entities used the Premises to store and distribute agricultural chemicals. Merwood, Inc. ("Merwood"), an agricultural sales and services company, used the Premises from 1974 to approximately 1982 to store and distribute fertilizer. Def.'s Opp'n Pl.'s Mot. Summ. J. 3 (ECF No. 24). At one point, Merwood built a lean-to unit and installed a tank farm for bulk fertilizer storage. Id. Unlike Defendant's tank farm, Merwood's facility did not have a secondary containment mechanism designed to capture agricultural chemicals released from the tanks. Id. at 4. In fact, an aerial photograph taken during Merwood's occupancy on the Premises depicts several stains in the soil, including a large stain near Merwood's tank farm. Id. Plaintiff's own expert witness testified that the depicted stain lies directly over what he refers to as the "core problem" of nitrate contamination at the Premises. Id.

Additionally, prior to Defendant's tenancy, Raymond Agricultural Warehouse ("Raymond Ag"), an affiliate of Plaintiff, operated a business on the Premises through which it distributed fertilizers and disposed of hazardous chemicals in significant quantities between 1981 and 1995. Raymond Ag, operating at the time as a "large quantity generator" of hazardous waste under California law, was issued violations in

---

[2] Unless otherwise noted, the following facts are taken, sometimes verbatim, from the parties' Cross-Motions for Summary Judgment and attached statements of undisputed facts (ECF Nos. 19, 27).

2

1994 by San Joaquin County ("the County") for illegally handling and disposing of approximately 25 containers of hazardous waste. The County investigated the Premises and reported that "some of the liquid containers [had] leaked and the soil there was stained" near the area with the most significant 1,2,3-TCP detection in the groundwater at issue in this case. After the County was unsatisfied with Raymond Ag's efforts to cover the containers and correct the problems, it referred the company to the County's Environmental Health Department, which reported unlabeled chemicals in Raymond Ag's warehouse and a "yellowish substance" on the ground. A subsequent inspection found that the company had not addressed these issues. Raymond Ag continued to operate on the Property throughout Defendant's tenancy until approximately 2003. ECF No. 24 at 5.

In 1996, Plaintiff and Defendant entered into a lease agreement ("the Lease") allowing Defendant to occupy and operate its business on the Premises. At the time the Lease was signed, Plaintiff notified Defendant that the Premises may have contained hazardous materials which may require removal. Lease provisions material to this case required Defendant to "comply promptly with all applicable statutes, ordinances, rules, regulations, orders, covenants and restrictions of record, and requirements in effect during the term of the Lease . . . .," as well as return the Premises to Plaintiff in the same condition as received. Reply Supp. Pl.'s Mot. Summ. J. 3–4 (ECF No. 26). The Lease also contained indemnity provisions under which Defendant agreed to indemnify and hold Defendant harmless for any breach of the Lease.

The main provisions of the Lease do not address the release, disposal, or presence of hazardous materials at the Premises, instead stating in only general terms that the lessee would "leave the property in the same condition as when received, wear and tear excluded." ECF No. 24 at 8. Hazardous materials are nowhere mentioned. Although the parties did subsequently agree to attach a "Hazardous Materials Addendum" to the Lease relating to the presence of hazardous materials and toxic substances, that Addendum stated only that both parties bore the responsibility to retain

qualified experts to deal with the detection and correction of contamination. Id. The Addendum, however, did not address remediation of toxic contamination on the Premises.[3]

After taking possession of the Premises, Defendant requested and was granted permission to install a "tank farm" facility to store approximately 20,000 gallons of liquid fertilizer. Defendant agreed to remove the tank farm and complete necessary clean-up upon vacating the Premises. After 10 years of operating a tank farm on the Premises, the District Attorney for San Joaquin County filed a verified complaint for injunction, civil penalties, and other relief arising out of Defendant's use and occupancy of the Premises. Defendant stipulated to a judgment for injunction in which it admitted releasing fertilizer or fertilizer residuary product into California water.

Defendant thereafter decided to vacate the Premises rather than continue operations subject to government oversight arising from the Stipulated Judgment. After removing its fertilizer tank facility, Defendant filed two separate environmental assessments with the County reporting elevated concentrations of ammonia and nitrogen—both of which are found in fertilizer and fertilizer residue. Although the results of these assessments suggested further evaluation was necessary, neither party nor the County took further action.

A year after Defendant vacated the Premises, however, the Health Department issued Plaintiff a "Notice to Abate," which Defendant contends was imposed for improperly storing hazardous waste. Plaintiff, on the other hand, claims the Notice merely directed Plaintiff to determine whether certain stored chemicals were in fact waste and, if so, to document that Plaintiff properly disposed of the potential waste. Pl.'s Resps. & Objs. Def.'s SUF 15–16 (ECF No. 31-1). Plaintiff was again cited three years

///

---

[3] In contrast, Plaintiff subsequently entered into a lease agreement with a third party that directly addressed hazardous materials remediation on the Premises. That lease stated that the lessee was responsible for "all investigatory and/or remedial action at the Premises . . . . that was caused or materially contributed to by [the lessee], or pertaining to or involving any Hazardous Substance brought onto the Premises during the term of this Lease . . . ." ECF No. 24 at 9.

4

later for failing to remove containers that had released hazardous waste onto the soil near the contaminated groundwater on the Premises.

In 2013, nearly 11 years after Defendant's occupancy, a third party seeking to purchase the Property from Plaintiff commissioned a Phase I Environmental Site Assessment. The study detected high levels of nitrate and 1,2,3-TCP in the groundwater on the Property, prompting the County to place the Property on its "Contaminated Sites List." As a result, the Water Board identified the Property to require regulatory clean-up oversight.[4] Upon receiving the Water Board's decision, Plaintiff demanded, in accordance with the Lease's contractual indemnity provisions, that Defendant hold Plaintiff harmless from any claims arising from Defendant's use of the Premises. Plaintiff accordingly sought reimbursement from Defendant for expenses incurred as a result of complying with the Water Board's decision. Defendant refused, and Plaintiff filed this action seeking indemnity.

## STANDARD

The Federal Rules of Civil Procedure provide for summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). One of the principal purposes of Rule 56 is to dispose of factually unsupported claims or defenses. Celotex, 477 U.S. at 325.

Rule 56 also allows a court to grant summary judgment on part of a claim or defense, known as partial summary judgment. See Fed. R. Civ. P. 56(a) ("A party may move for summary judgment, identifying each claim or defense—or the part of each

---

[4] Plaintiff contends that in May 2018, the Water Board determined that Defendant was a responsible party for the environmental cleanup based on its operations and alleged environmental violations on the Premises during its occupancy. Pl.'s Opp. D.'s Mot. Summ. J., 2 (ECF No. 31). Defendant, on the other hand, denies that this conclusion represents the Water Board's official disposition on whether Defendant was responsible for the groundwater contamination on the Premises. D.'s Reply Supp. D.'s Mot. Summ. J., 1 (ECF No. 32).

5

claim or defense—on which summary judgment is sought."); see also Allstate Ins. Co. v. Madan, 889 F. Supp. 374, 378-79 (C.D. Cal. 1995).  The standard that applies to a motion for partial summary judgment is the same as that which applies to a motion for summary judgment.  See Fed. R. Civ. P. 56(a); State of Cal. ex rel. Cal. Dep't of Toxic Substances Control v. Campbell, 138 F.3d 772, 780 (9th Cir. 1998) (applying summary judgment standard to motion for summary adjudication).

In a summary judgment motion, the moving party always bears the initial responsibility of informing the court of the basis for the motion and identifying the portions in the record "which it believes demonstrate the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323.  If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986); First Nat'l Bank v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968).

In attempting to establish the existence or non-existence of a genuine factual dispute, the party must support its assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits[,] or declarations . . . or other materials; or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).  The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 251-52 (1986); Owens v. Local No. 169, Assoc. of W. Pulp and Paper Workers, 971 F.2d 347, 355 (9th Cir. 1987).  The opposing party must also demonstrate that the dispute about a material fact "is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248.  In other words, the judge needs to answer the preliminary question before the evidence is left to the jury of "not whether there is literally no evidence, but

whether there is any upon which a jury could properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed." Anderson, 477 U.S. at 251 (quoting Improvement Co. v. Munson, 81 U.S. 442, 448 (1871)) (emphasis in original). As the Supreme Court explained, "[w]hen the moving party has carried its burden under Rule [56(a)], its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586. Therefore, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Id. 87.

In resolving a summary judgment motion, the evidence of the opposing party is to be believed, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. Anderson, 477 U.S. at 255. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898 (9th Cir. 1987).

## ANALYSIS

### A. First and Second Causes of Action: Contribution and Equitable Indemnity

Plaintiff's first and second causes of action seek to hold Defendant liable for environmental clean-up costs arising from Defendant's alleged contamination of the Premises during its occupancy. A claim for contribution under California Civil Code § 1432 requires Plaintiff to show that Defendant is jointly liable for the costs imposed by the Water Board's regulatory oversight. See NW Airlines, Inc. v. Transp. Workers Union of Am., AFL-CIO, 451 U.S. 77, 86–87 (1981). "Typically, a right to contribution is recognized when two or more persons are liable to the same plaintiff for the same injury and one of the joint tortfeasors has paid more than his fair share of the common liability."

7

Id.; see also Fireman's Fund Ins. Co. v. Md. Cas. Co., 65 Cal. App. 4th 1279, 1293 (1998) ("'Equitable contribution' . . . . is the right to recover, not from the party primarily liable for the loss, but from a co-obligor who shares such liability with the party seeking contribution."). Similarly, Plaintiff's second cause of action for equitable indemnity allows Plaintiff to receive either full or partial indemnity from Defendant on a comparative fault basis. See Selma Pressure Treating Co. v. Osmose Wood Preserving Co., 221 Cal. App. 3d 1601, 1611 (1990).

Based on the facts above, the Court is unable to conclude as a matter of law that either party is responsible for the contamination on the Premises. The record presents a myriad of factual disputes regarding whether Defendant, Merwood, Raymond Agricultural, or Plaintiff itself caused the contamination and to what extent. The Court cannot say as a matter of law that Defendant left the Premises in any more contaminated condition than when its tenancy commenced, given what appears to be not only polluting activities by previous occupants at the Property, but also pollution that occurred after Defendant vacated the Premises at the conclusion of its lease. The parties also dispute whether Defendant was officially named as a responsible party by the Water Board so as to establish a clear joint obligation to compensate Plaintiff for environmental cleanup costs. ECF No. 31 at 2; ECF No. 32 at 1. Determining the parties' comparative liability for the environmental clean-up on the Premises is therefore best reserved for the trier of fact. Both Motions necessarily fail on that basis alone. Consequently, Defendant's Motion for Summary Judgment on Plaintiff's first and second causes of action is DENIED.

**B.     Third Cause of Action:  Contractual Indemnity**

Both parties moved for summary judgment on Plaintiff's third cause of action for contractual indemnity. As far as Plaintiff's contractual indemnity claim relies on the indemnity clause in the Lease, the trier of fact would still need to determine as a threshold matter whether Defendant's acts or omissions caused the groundwater contamination in order to trigger the indemnity clause. Pl.'s Mem. Supp. Mot. Summ. J.,

5–6 (ECF No. 19); ECF No. 24 at 12. As explained above, the material disputes regarding who caused the contamination on the Premises foreclose the Court from holding in favor of either party as a matter of law.

Nor is Plaintiff's contractual indemnity claim amenable to a decision on summary judgment given what appears to be ambiguity in the parties' Lease. ECF No. 24 at 12. Although Section 7.2(c) of the Lease requires Defendant to return the Premises to Plaintiff in the same condition as received, ECF No. 19 at 6, Defendant argues that the parties intended that provision to ensure that Plaintiff would regain possession of the Premises clean and free from debris—not subterranean contamination. ECF No. 24 at 12. Defendant supports this conclusion by pointing out that the parties specifically addressed hazardous waste in the subsequently attached Addendum, albeit only with respect to the retention of qualified experts. Id. Interpreting this ambiguous provision of the Lease is properly left to the trier of fact. See Meridian Project Sys., Inc. v. Hardin Constr. Co., LLC, 426 F. Supp. 2d 1101, 1109 (E.D. Cal. 2006). The Court therefore cannot conclude as a matter of law whether Defendant is contractually obligated to reimburse Plaintiff for costs associated with environmental clean-up of the Premises.[5]

Given the material issues of fact regarding causation of the groundwater contamination and ambiguity in the Lease, both Motions for Summary Judgment on Plaintiff's third cause of action are DENIED.

///
///
///
///

---

[5] Defendant further argues that Plaintiff's contractual indemnity claim is barred by the statute of limitations. ECF No. 27 at 17–18. The Court disagrees. The statute of limitations for a contractual indemnity claim does not begin to accrue upon an alleged breach, but rather when the indemnitor sustains the loss by paying the money sought to be indemnified from the indemnitee. See People ex rel. Dep't Transp. v. Superior Ct., 26 Cal. 3d 744, 751 (1980)). Here, Plaintiff is seeking indemnity from costs arising out of Defendant's alleged contamination of the Premises. Because those costs were not established or ascertainable until the Water Board required Plaintiff to pay for environmental investigation and clean-up in 2014, Plaintiff's claims comply with the applicable statute of limitations.

**CONCLUSION**

For the reasons given above, Plaintiff's Motion for Summary Judgment, ECF No. 19, and Defendant's Cross-Motion for Summary Judgment, ECF No. 27, are both DENIED.

IT IS SO ORDERED.

Dated: April 22, 2019

_____
MORRISON C. ENGLAND, JR
UNITED STATES DISTRICT JUDGE